IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01274-WYD-KLM

MICHAEL DICINO,

    Plaintiff,

v.

SEAN RENFRO, Administrative Sergeant, in his individual and official capacities, and
ALEXANDRA GARCIA, Nurse, in her individual and official capacities,

    Defendants.

_____

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Sean Renfro's ("Renfro") **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(5)** [sic][1] [Docket No. 28; Filed October 11, 2012] ("Renfro's Motion") and on Defendant Alexandra Garcia's ("Garcia") **Motion to Dismiss Plaintiff's Second and Final Amended Prisoner Complaint [Doc. #16]** [Docket No. 45; Filed December 5, 2012] ("Garcia's Motion"). On November 13, 2012, Plaintiff filed a Response [#40] to Renfro's Motion, and on January 25, 2013, Plaintiff filed a Response [#55] to Garcia's Motion. On December 7, 2012, Defendant Renfro filed a Reply [#46] and on February 7, 2013, Defendant Garcia filed a Reply [#57]. The Motions are thus ripe for review. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3, the Motions are referred to this Court for recommendation [#29, #50]. Having reviewed the

---

[1] Defendant Renfro actually moves to dismiss Plaintiff's Second Amended Complaint on the basis of Rule 12(b)(6), not 12(b)(1) or 12(b)(5). *See Renfro's Motion* [#28] at 1. Thus, the Court addresses Defendant Renfro's arguments below solely pursuant to Rule 12(b)(6).

entire case file and being sufficiently advised, the Court **RECOMMENDS** that Defendant Renfro's Motion [#28] be **GRANTED** and that Defendant Garcia's Motion [#45] be **GRANTED IN PART and DENIED IN PART**.

## I. Summary of the Case

Plaintiff, who proceeds *pro se* in this matter, is presently incarcerated at the Arapahoe County Detention Facility, although at the time of the events underlying this lawsuit he was incarcerated at Jefferson County Jail. *2nd Am. Compl.* [#16] at 2-3. In short, Plaintiff asserts that he was subjected to "filthy conditions" while a pretrial detainee at Jefferson County Jail. As a result of these alleged conditions, he developed a severe and painful rash that covered his entire body, but he was not provided with adequate medical treatment despite multiple requests and complaints. *Id.* at 3. He asserts one claim in this lawsuit, an Eighth Amendment claim for cruel and unusual punishment. *Id.* at 4. He seeks $50,000 in compensatory damages against each of the two Defendants, $50,000 in punitive damages against each Defendant, and costs of this suit. *Id.* at 8.

Specifically, Plaintiff asserts that he was housed in the administrative segregation unit of Jefferson County Jail at all times pertinent to this lawsuit. *Id.* at 4. Plaintiff alleges that the "shower constantly leaked into the dayroom outside of [Plaintiff's] cell and into [Plaintiff's] cell causing it to be a constant moldy puddle." *Id.* He states that he was not permitted a mop to clean up his area. *Id.* He developed an obvious, severe and painful red rash over his entire body. *Id.*

Defendant Garcia was the nurse in charge of inmates in the administrative segregation unit where Plaintiff was housed. *Id.* Plaintiff asserts that between August 24,

2011 and August 30, 2011, he made several oral and written requests to Defendant Garcia concerning his rash. *Id.* However, he was not permitted to see a doctor until November 4, 2011, at which time he was prescribed steroids. *Id.* at 4-5. Plaintiff claims that, despite multiple requests to Defendant Garcia, he never received the steroids and continued to suffer from the rash. *Id.* at 5. On November 23, 2011, Plaintiff received a written medical communication form from Defendant Garcia advising him to be patient. *Id.* Although he never received his medication, Plaintiff continued to complain to Defendant Garcia about his rash until he was released from Jefferson County Jail on May 25, 2012. *Id.* Plaintiff claims that Defendant Garcia's failure to act caused him pain, suffering, physical injury, and emotional distress. *Id.*

Defendant Renfro was the administrative sergeant in charge of the conditions of the administrative segregation unit at Jefferson County Jail. *Id.* On February 20, 2012, Plaintiff began sending Defendant Renfro "kite after kite (jail requests)" complaining about the dirty conditions. *Id.* Plaintiff alleges that Defendant Renfro responded to the kites by acknowledging the conditions in which Plaintiff was forced to live, but Defendant Renfro failed to take any action to fix the conditions. *Id.* at 5-6. Plaintiff asserts that the moldy puddle in his cell remained there until his release on May 25, 2012. *Id.* at 6. Plaintiff claims that Defendant Renfro's failure to act caused him pain, suffering, physical injury, and emotional distress. *Id.*

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ.

P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can be granted."). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *see also Shero*, 510 F.3d at 1200 ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 129 S. Ct. at 1950 (quotation marks and citation omitted).

When considering Plaintiff's filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

#### A. Defendant Garcia

Defendant Garcia argues: (1) that Plaintiff fails to allege a causal link between his cell conditions and his alleged rash; (2) that Plaintiff fails to sufficiently plead the elements of an Eighth Amendment deliberate indifference claim; and (3) that Plaintiff fails to identify any policy, practice, or custom underlying his official capacity claim against her.

The first and third arguments may be quickly addressed. As to the first, Defendant Garcia argues that Plaintiff fails to allege a causal link between cell conditions and his rash. *Garcia's Motion* [#45] at 4. However, even liberally reading the Second Amended Complaint, the Court finds that Plaintiff's deliberate indifference claim against Defendant Garcia lies only in her alleged indifference to Plaintiff's medical needs. Plaintiff does not claim that Defendant Garcia was responsible for the cell conditions that allegedly caused his rash. Accordingly, this argument is inapplicable to the substance of Plaintiff's claim against her and the Court therefore rejects it.

As to the third argument, Defendant Garcia is sued in her individual and official

capacities as a nurse at the Jefferson County Jail.  She argues that, to sustain a cause of action against her in her official capacity, Plaintiff must allege a policy, practice or custom of the public entity that caused the alleged constitutional deprivation, but that Plaintiff failed to make this allegation.  *Motion* [#45] at 8.  The Court agrees that the Second Amended Complaint does not explicitly allege the requisite policy, practice, or custom in connection with Defendant Garcia's alleged deliberate indifference to Plaintiff's medical needs.  Moreover, Plaintiff does not address this argument in his Response [#55]; rather, he explicitly only asks the Court to allow his claim against Defendant Garcia in her individual capacity to proceed.  *Response* [#55] at 9.  The Court therefore finds that Plaintiff has waived his Eighth Amendment claim against Defendant Garcia in her official capacity.  In the alternative, because Plaintiff has failed to allege a policy, practice, or custom that caused the alleged deprivation, he has failed to state a claim regarding Defendant Garcia in her official capacity.  The Court therefore **recommends** that this claim be **dismissed** with prejudice.

Thus, the Court turns to Defendant Garcia's second and final argument, concerning Plaintiff's claim against her in her individual capacity.  Plaintiff alleges that Defendant Garcia's failure to timely respond to his requests for medical care and for prescribed medicine rises to the level of a constitutional violation.  *2nd Am. Compl.* [#16] at 4-5.  In response, Defendant Garcia argues that Plaintiff's injury was not sufficiently serious to support an Eighth Amendment claim.  *Motion* [#45] at 5-8.

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted.  U.S. Const. amend. VIII.  Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision.  *Gregg v.*

*Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (quoting *Gregg*, 428 U.S. at 173). To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

### a. Objective Component

"A medical need is sufficiently serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quoting *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D.C.N.H. 1977)).

Plaintiff makes the following allegations in support of his assertion that his medical need was sufficiently serious to meet the objective component of an Eighth Amendment deliberate indifference claim: (1) that he "developed a severe and painful red rash all over his entire body;" (2) that the rash lasted from at least August 24, 2011 through May 25, 2012; (3) that the rash was so obvious that anyone would see that he needed medical attention; and (4) that his condition was diagnosed by a doctor as requiring prescription medicine, *i.e.*, steroids, to control it. 2nd Am. Compl. [#16] at 4-5.

Defendant Garcia argues that a rash is a *de minimus* injury that is alone not sufficiently serious to support an Eighth Amendment claim, citing to a number of other

courts that have considered the issue. *See Garcia's Motion* [#45] at 5-7. In *Tasby v. Cain*, 86 F. App'x 745, 746 (5th Cir. 2004), the incarcerated plaintiff alleged that wearing back restraints for short periods when outside of his cell caused him to suffer a rash. In *Dolberry v. Levine*, 567 F. Supp. 2d 413, 418 (W.D.N.Y. 2008), the incarcerated plaintiff alleged that he suffered a rash due to a lack of showers. In *Brown v. Pierce*, No. 05-1322, 2008 WL 619288, at *1, (C.D. Ill. (Mar. 4, 2008), the incarcerated plaintiff had a "pin-sized" rash on his arms for which he was given a cream. In *Hamm v. Riley*, No. 0:05-2046-HMH-BM, 2007 WL 1377611, at *2 (D.S.C. May 7, 2007), the incarcerated plaintiff alleged he suffered from a rash for six weeks; he was prescribed antibiotics and medicated soap. In *Barnes v. Huffman*, No. 7:06cv00745, 2007 WL 3339311, at *5 n.9 (W.D. Va. Nov. 7, 2007), the incarcerated plaintiff merely had some small, red areas on one forearm.

The Court finds each of these case referenced by Defendant Garcia to be distinguishable from the facts of the present case. In these cases, unlike here, there were no allegations that the rash was severe and painful and covered large portions of the inmate's body; that the rash lasted a long period such as nine months; that it was so obvious that anyone could see that the inmate needed medical attention; or that the inmate was diagnosed by a doctor as requiring strong prescription medicine to control the rash.

Defendant Garcia also cites to *Gonzalez-Reyna v. Ellis*, No. 1:09CV522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009), the facts of which are most similar to those of the instant matter. There, the incarcerated plaintiff alleged that he developed a painful, scarring rash on his feet, legs, chest, and neck that lasted at least two years, but that he was prevented from seeing a physician for to obtain treatment for that entire period. The court expressed doubt whether a skin rash, even if painful and itching, was sufficiently

serious enough to support an Eighth Amendment violation. However, it chose not to address whether a rash could be serious enough because it decided that the plaintiff did not meet the subjective component of the test.

Here, at this early phase of the case, the Court finds that the alleged facts support the presence of a sufficiently serious medical need. The facts alleged by Plaintiff are, when examined as a whole, more serious than any of the situations in the cases cited by Defendant Garcia. *See also Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (noting in connection with a deliberate indifference claim that "[i]n general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations . . . may meet the standard despite a shorter duration") (internal quotation marks omitted). Plaintiff's alleged pain, the extent of the condition over his body, the length of time it lasted, the obviousness of the condition, and the doctor's prescription for steroid medication all support a finding that the objective component of this test is met.

### b.     Subjective Component

Turning to the subjective component of the test, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Court examines whether Defendant Garcia was aware of Plaintiff's condition, whether she delayed in providing treatment, and whether her actions constituted a mere difference of opinion in the course of treatment.

Plaintiff has pled sufficient facts to state a plausible claim that Defendant Garcia knew of, and deliberately disregarded, Plaintiff's need for medical treatment under the

subjective element of the deliberate indifference test. The subjective element may be demonstrated by showing that Defendant Garcia "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety" or acted with a sufficiently culpable state of mind. *See Farmer*, 511 U.S. at 837. A defendant knew of and disregarded an excessive risk to a prisoner's health or safety when she was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* she actually drew that inference. *Id.* Furthermore, "[d]eliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ramos*, 639 F.2d at 575 (citation omitted). Pursuant to this standard, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite [her] knowledge of a substantial risk of serious harm." *Id.* at 842.

Plaintiff alleges that between August 24, 2011 and August 30, 2011, he made several requests, both orally and in writing, to Defendant Garcia, complaining about his rash, but it was not until two months had passed that he was permitted to see a doctor. *2nd Am. Compl.* [#16] at 4-5. On November 4, 2011, the doctor prescribed steroids to Plaintiff for his rash. *Id.* at 5. Plaintiff alleges that he repeatedly requested the steroids from Defendant Garcia and continued to complain to her about his rash. *Id.* Defendant Garcia wrote to Plaintiff on November 23, 2011, telling him to be patient, but he never received his prescription and he suffered from his rash until he was released on May 25, 2012. *Id.* At the latest, Defendant Garcia was made aware of the seriousness of Plaintiff's condition in the days following Plaintiff's visit to the doctor when he was prescribed with a medication

to combat the rash. These allegations plausibly aver that Defendant Garcia was on notice that Plaintiff suffered from a sustained, obvious, and sufficiently serious need for medical treatment.

To the extent that Plaintiff also raises an issue related to delay in receiving medical treatment, the Tenth Circuit has held that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2008)). However, "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210 (noting that "not every twinge of pain suffered as the result of delay in medical care is actionable"). Liberally construing the allegations in the Second Amended Complaint, the Court finds that suffering from a "painful" full-body rash for a period of nine months may constitute substantial harm sufficient to withstand the Motion.[2]

Finally, Defendant Garcia argues that "a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action." *Garcia's Motion* [#45] at 8. Thus, "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support

---

[2] Plaintiff adds in his Response that he suffered from the chronic pain on a daily basis and that he had difficulty sleeping, difficulty focusing on writing or reading, and difficulty exercising because of sweat increasing the pain and discomfort. *Response* [#55] at 7.

a claim of cruel and unusual punishment." *Ramos*, 639 F.2d at 575.  Although a prisoner does not state a valid claim regarding deliberate indifference simply because he was denied "a particular course of treatment" that he desired, *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006), and "a prison doctor remains free to exercise his or her independent professional judgment," *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997), Plaintiff's claim does not concern a difference of opinion in the type of treatment he received.  Instead, Plaintiff argues that he received *no* follow-up treatment, despite the many requests that he submitted to Defendant Garcia and despite a doctor's prescription for steroids.  Defendant Garcia's argument on this point is without merit.

Plaintiff has stated allegations to support his claim that Defendant Garcia knew of and disregarded a substantial risk of serious harm to Plaintiff due to a failure to treat his full-body rash for an extended period.  Plaintiff has alleged facts that, if proven, demonstrate that the symptoms of his full-body rash persisted for nine months.  He additionally asserts that although he alerted Defendant Garcia to the existence of his continuing symptoms, he did not receive follow-up treatment.  These facts, if proven, could plausibly demonstrate that Defendant Garcia failed to facilitate the treatment of Plaintiff's injury, despite her knowledge that Plaintiff continued to suffer.  Thus, the Court recommends finding that Plaintiff plausibly pleads the subjective element required for an Eighth Amendment claim.

Thus, at this early stage of the proceedings and prior to any discovery, the Court cannot conclude that Plaintiff has failed to allege enough facts to state a plausible claim for relief under the Eighth Amendment.  Accordingly, the Court **recommends** that Defendant Garcia's Motion to dismiss claims against her in her individual capacity be **denied**.

**B.     Defendant Renfro**

Defendant Renfro makes five arguments in support of his request to have all claims against him dismissed: (1) Plaintiff fails to state a claim for cruel and unusual living conditions; (2) Plaintiff's claim for compensatory damages is barred by the Prisoner Litigation Reform Act; (3) Plaintiff fails to allege facts sufficient to support any claim against Defendant Renfro; (4) Plaintiff fails to identify any policy, practice, or custom underlying his official capacity claim; and (5) Defendant Renfro is entitled to qualified immunity in his individual capacity.

Addressing the fourth argument first, Defendant Renfro is sued in his individual and official capacities as Administrative Sergeant at Jefferson County Jail. As did Defendant Garcia, Defendant Renfro argues that, to sustain a cause of action against him in his official capacity, Plaintiff must allege a policy, practice or custom of the public entity that caused the alleged constitutional deprivation, but that Plaintiff failed to make this allegation. *Renfro's Motion* [#28] at 7. The Court agrees that the Second Amended Complaint does not explicitly allege the requisite policy, practice, or custom in connection with Defendant Renfro's alleged deliberate indifference to Plaintiff's living conditions. Further, Plaintiff does not address this argument in his Response [#28] and appears to concede it. The Court therefore finds that Plaintiff has waived his Eighth Amendment claim against Defendant Renfro in his official capacity. In the alternative, because Plaintiff has failed to allege a policy, practice, or custom that caused the alleged deprivation, he has failed to state a claim regarding Defendant Renfro in his official capacity. The Court thus **recommends** that this claim be **dismissed** with prejudice.

Defendant Renfro asserts qualified immunity from Plaintiff's claim against him in his individual capacity. Thus, the Court will first examine whether Plaintiff's Second Amended Complaint passes muster pursuant to Fed. R. Civ. P. 12(b)(6). *Butler v. Rio Rancho Pub. Sch. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003) ("Since the [defendant] raised the defense of qualified immunity in its motion to dismiss, we first examine whether the [plaintiffs] asserted a violation of federal law in their complaint.").

Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Defendant Renfro argues that, because Plaintiff has not demonstrated a plausible violation of his Eighth Amendment constitutional right, he is entitled to qualified immunity.

A government official is entitled to qualified immunity from liability for civil damages when his or her allegedly unlawful conduct did not violate any of the plaintiff's statutory or constitutional rights that (1) were "clearly established" at the time of the conduct, and (2) would have been known to a reasonable person in the official's position. *Harlow*, 457 U.S. at 818 (stating that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is

appropriate). The Supreme Court has stated that "[f]or executive officials in general . . . our cases make plain that qualified immunity represents the norm." *Id.* at 807. Thus, a government official is entitled to qualified immunity in "[a]ll but the most exceptional cases." *Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

Turning to Plaintiff's claim for relief against Defendant Renfro, Plaintiff alleges that Defendant Renfro's failure to respond to his many "kites" requesting that his cell be dried or that he be provided with a mop rises to the level of a constitutional violation. *Response* [#40] at 6-7. Defendant argues that Plaintiff's alleged injury and conditions of confinement are not sufficiently serious to support an Eighth Amendment claim. [#24] at 8. The Court construes Plaintiff's contentions against Defendant Renfro to allege a claim for failure to protect from cruel and unusual living conditions in violation of the Eighth Amendment.

To succeed on an Eighth Amendment claim for failure to protect, a plaintiff must demonstrate that objectively, he is incarcerated under conditions that pose a substantial risk of serious harm, and that subjectively, prison officials were deliberately indifferent to his safety. *See, e.g., Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006). "Mere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in this context." *Id.* (quoting *Verdicia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)). Thus, "the official must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996).

Under the objective prong of the Eighth Amendment deliberate indifference test, the Court must first consider whether the conditions of incarceration complained of are "sufficiently serious," *i.e.*, whether the "conditions pos[e] a substantial risk of serious harm."

*Id.* at 1205. Plaintiff alleges that the long-standing moldy puddle of shower water in front of and inside his cell caused his full-body, painful skin rash; he does not allege any other type of harm caused by the standing shower water. Defendant Renfro argues that Plaintiff's Second Amended Complaint lacks a factual predicate that could lead one to infer that the moldy puddle caused Plaintiff's rash. *See Renfro's Reply* [#46] at 10. The Court has already found in its discussion of Defendant Garcia's Motion that Plaintiff's rash may, as alleged, support an actionable Eighth Amendment violation. However, the Court need not decide at this juncture whether Plaintiff has adequately alleged a causal connection between the asserted risk, *i.e.*, the puddle, and the asserted harm, *i.e.*, the rash, because even assuming *arguendo* that he has, the Court finds that his allegations regarding the subjective component of the test are insufficient as a matter of law.

As noted, deliberate indifference is more than mere negligence and should be construed as equating to recklessness on the part of the defendant. *Smith*, 445 F.3d at 1258. Here, therefore, Plaintiff must demonstrate both that Defendant Renfro was aware of facts from which an inference could be drawn that Plaintiff was subject to a substantial risk of serious harm and that Defendant Renfro actually drew that inference. *See Riddle*, 83 F.3d at 1204. Plaintiff asserts that he made Defendant Renfro aware of the water starting on February 20, 2012, six months after Plaintiff's rash allegedly began. There is no indication that Plaintiff informed Defendant Renfro that he had been to see a doctor, that he had been prescribed medication, or that the doctor had opined that the water could have been causing Plaintiff's rash. There is also no indication that Plaintiff informed Defendant

Renfro of the severity of his rash, how long he had it, or the pain he suffered from it.[3] In fact, at most, Plaintiff suggested to Defendant Renfro three months before he was transferred from Jefferson County Jail that the standing water may have been causing his rash. This is simply insufficient for the Court to find that Defendant Renfro acted with obduracy and wantonness as opposed to inadvertence or error in good faith. *See Whitley*, 475 U.S. at 319. Plaintiff has not pled sufficient facts to state a plausible claim that Defendant Renfro knew of and deliberately disregarded a danger to Plaintiff based on the living conditions of his cell. Plaintiff has shown neither that Defendant Renfro "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety" nor that he acted with a sufficiently culpable state of mind. *See Farmer*, 511 U.S. at 837. Thus, Plaintiff's claim against Defendant Renfro must fail. Because Plaintiff has not pled a plausible violation of the Eighth Amendment by Defendant Renfro, the Court finds that Defendant Renfro is entitled to qualified immunity. Accordingly, the Court **recommends** that Plaintiff's claim against Defendant Renfro be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant Renfro's Motion [#28] be **GRANTED**, that the official capacity claim be **DISMISSED with prejudice** and the individual capacity claim be **DISMISSED without prejudice**, and that Defendant Renfro be **DISMISSED** from this action.

The Court further **RECOMMENDS** that Defendant Garcia's Motion [#45] be

---

[3] With his Response [#40], Plaintiff provides an Inmate/Detainee Request Form he submitted that was returned by Defendant Renfro. On the form, Plaintiff indicated that he felt sick and had a rash that he attributed to the puddles standing in the day room outside of his cell. *Response* [#40] at 17. He did not provide further details.

**GRANTED IN PART and DENIED IN PART**, as outlined above.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 14, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge